**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NORMAN T. POWELL,                )
                                 )        3:02-cv-00350-HDM-WGC
          Petitioner,            )
                                 )        **ORDER**
vs.                              )
                                 )
RICK WALKER, *et al.*,           )
                                 )
          Respondents.           )
_____/

          This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254, filed by

Norman T. Powell, a Nevada prisoner represented by counsel.  This matter comes before the Court

on the merits of the second amended petition.

**I. Procedural History**

          On August 27, 1995, pursuant to a jury verdict in the Second Judicial District Court for the

State of Nevada, petitioner was convicted of three counts of assault with a deadly weapon, one count

of being an ex-felon in possession of a firearm, and one count of discharging a firearm from a motor

vehicle.  (Exhibit 52).[1]  The state district court adjudicated petitioner as a habitual criminal pursuant

to NRS 208.010.  (Exhibit 55).  The judgment of conviction was entered on August 10, 1995.  (*Id.*).

_____

          [1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 11-14
(Exhibits 1-154), ECF Nos. 41-45 (Exhibits 155-196), ECF No. 96 (Exhibits 197-209), and ECF No.
128 (Exhibit 210).

Petitioner filed a direct appeal.  (Exhibit 57).  By order filed February 26, 1997, the Nevada Supreme Court entered an order affirming in part and reversing in part.  (Exhibit 81).  The Nevada Supreme Court reversed two of petitioner's assault convictions and remanded the case to the state district court for resentencing.  (*Id.*).  At the resentencing hearing, on May 16, 1997, petitioner received three concurrent life without the possibility of parole sentences on the convictions of one count of assault with the use of a deadly weapon, one count of being an ex-felon in possession of a firearm, and one count of discharging a firearm from a motor vehicle.  (Exhibit 88).  Upon a timely appeal, the Nevada Supreme Court consolidated petitioner's appeals from the denial of a motion to correct illegal sentence and from his judgment of conviction and remanded those matters to the district court for appointment of counsel to represent Powell on appeal.  (Exhibit 94).  On return to the Nevada Supreme Court and after briefing by the parties (Exhibits 101, 102, 106), on April 13, 1999, the Nevada Supreme Court denied petitioner's claims but found two errors in the judgment's form: (1) the district court incorrectly stated in the judgment of conviction that petitioner was guilty of the crime of being a habitual criminal, when habitual criminality is a status, not a crime; and (2) the district court incorrectly stated that petitioner was sentenced on the habitual criminal allegation, because habitual criminal adjudication is an enhancement of punishment, not a separate offense for which a separate sentence may be imposed.  (Exhibit 108).  The Nevada Supreme Court remanded the case to the district court to correct the judgment of conviction.  (*Id.*).  A corrected judgment was filed on April 28, 1999, in which petitioner was sentenced to three concurrent sentences of life without the possibility of parole on the convictions of one count of assault with the use of a deadly weapon, one count of being an ex-felon in possession of a firearm, and one count of discharging a firearm from a motor vehicle.  (Exhibit 110).  Petitioner appealed the corrected judgment, and the Nevada Supreme Court dismissed the appeal by order filed August 26, 1999.  (Exhibit 115).  Remittitur issued on September 21, 1999.  (Exhibit 117).

On May 2, 2000, petitioner filed a *pro per* post-conviction habeas petition in the state district court.  (Exhibit 118).  Following the appointment of counsel and supplemental filings, the district

court entered an order denying the post-conviction petition on July 17, 2001.  (Exhibit 133).

Petitioner appealed.  (Exhibit 135).  By order filed March 14, 2002, the Nevada Supreme Court

dismissed the appeal and remanded to state court because the district court failed to address the legal

issues in the petition and made no findings of fact.  (Exhibit 150).  On July 16, 2004, the district

court entered its findings of fact, conclusions of law, and judgment denying the post-conviction

habeas petition.  (Exhibit 167).

Following a notice of appeal and briefing by the parties, the Nevada Supreme Court filed an

order on September 21, 2005, affirming the denial of the post-conviction habeas petition.  (Exhibit

187).  Petitioner filed a *pro per* petition for en banc reconsideration (Exhibit 188), which was denied

on December 28, 2005.  (Exhibit 190).  Remittitur issued on January 25, 2006.  (Exhibit 191).

Petitioner dispatched his *pro per* federal habeas petition to this Court on June 25, 2002.

(ECF No. 5).  The Office of the Federal Public Defender was appointed to represent petitioner.

(ECF No. 4).  Petitioner's counsel filed a motion to stay proceedings and administratively close this

action pending resolution of state court matters.  (ECF No. 10).  On December 16, 2002, this Court

entered an order dismissing the action without prejudice and administratively closing the case to

allow petitioner to exhaust his state court remedies.  (ECF No. 15).  In the order dismissing the case,

the Court indicated that this case was subject to being reopened upon a motion by petitioner.  *(Id.)*.

Through counsel, petitioner returned to this Court seeking to reopen his case.  (ECF No. 33).

By order filed March 7, 2006, this Court granted petitioner's motion to reopen this case and directed

the filing of an amended petition.  (ECF No. 35).  Petitioner filed a first amended petition on June

16, 2006.  (ECF No. 40).  The first amended petition contained seven grounds for habeas corpus

relief.  *(Id.)*.

Respondents filed a motion to dismiss the petition.  (ECF No. 57).  By order filed August 30,

2007, this Court granted in part, and denied in part, the motion to dismiss.  (ECF No. 66).

Specifically, the Court ruled that Grounds One and Seven of the first amended petition were

unexhausted, and that all remaining grounds were exhausted.  *(Id.)*.  Because the Court found the

first amended petition to be mixed, containing both exhausted and unexhausted claims, petitioner was given options for handling the unexhausted claims. (*Id.*). Petitioner filed a motion for reconsideration on September 13, 2007. (ECF No. 67). After briefing by the parties, the Court denied the motion for reconsideration on June 2, 2008. (ECF No. 77).

Pursuant to the options given to petitioner in the Court's prior order, on July 17, 2008, petitioner filed a motion for a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to return to state court to exhaust Grounds One and Seven of the first amended petition. (ECF No. 80). On November 12, 2008, this Court granted petitioner's motion for a stay and abeyance while he returned to state court, for the second time, to exhaust state court remedies as to Grounds One and Seven. (ECF No. 89).

On January 23, 2009, petitioner filed a habeas petition in state district court containing the same claims presented in Grounds One and Seven of the first amended federal habeas petition. (Exhibit 197). The state district court denied the petition. (Exhibit 200). Petitioner appealed the denial of the petition. (Exhibit 202). The Nevada Supreme Court affirmed the denial of the petition, finding the petition untimely, successive, and an abuse of the writ. (Exhibit 208). Remittitur issued on October 6, 2010. (Exhibit 209).

Following his second return to state court to exhaust claims, on November 16, 2010, petitioner moved to reopen the instant federal habeas corpus action. (ECF No. 92). By order filed December 21, 2010, this Court granted petitioner's motion to reopen the case. (ECF No. 94). On January 20, 2011, petitioner filed a second amended petition. (ECF No. 95). Respondents filed the a motion to dismiss on June 7, 2011, seeking to dismiss Ground Seven as untimely and Grounds One and Seven as procedurally defaulted. (ECF No. 104). By order filed July 9, 2014, the Court denied respondents' motion to dismiss. (ECF No. 120). The Court ruled that Ground Seven was timely. (*Id.*). The Court further ruled that Grounds One and Seven were procedurally defaulted in state court, but deferred the issues of cause and prejudice and fundamental miscarriage of justice until the merits were fully briefed. (*Id.*). The Court directed counsel to file an answer and a reply. (*Id.*). On

4

August 1, 2014, respondents filed an answer.  (ECF No. 124).  On August 29, 2014, petitioner filed a

reply.  (ECF No. 127).  The Court now considers the merits of the second amended petition.

**II.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

§ 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable

standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting

*Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court

precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

1  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

2  principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

3  529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

4  than merely incorrect or erroneous; the state court's application of clearly established federal law

5  must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).  In determining whether a

6  state court decision is contrary to, or an unreasonable application of federal law, this Court looks to

7  the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

8  *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

9      In a federal habeas proceeding, "a determination of a factual issue made by a State court shall

10  be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of

11  correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  If a claim has been

12  adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set

13  in § 2254(d) and (e) on the record that was before the state court.  *Cullen v. Pinholster*, 131 S.Ct.

14  1388, 1400 (2011).

15  **III.  Merits Analysis of Grounds One through Seven[2]**

16      **A.  Ground One**

17      Petitioner alleges that sentencing him to three concurrent life sentences without the

18  possibility of parole violates the Eighth Amendment's proportionality principle and thus constitutes

19  cruel and unusual punishment in violation of the Eighth Amendment.  (ECF No. 95, at pp. 11-13).

20      A sentence violates the Eighth Amendment if it is grossly disproportionate to the crime.

21  *Solem v. Helm*, 463 U.S. 277, 296-97 (1983).  A punishment is unconstitutional if the "evolving

22  standards of decency that mark the progress of a maturing society" soundly reject it.  *Trop v. Dulles*,

23  356 U.S. 86, 101 (1958).  In ruling that the execution of persons who were 18 years of age at the

24

25      [2] This Court previously found that Grounds One and Seven were procedurally defaulted in state
26  court.  This Court further ruled that the cause and prejudice arguments and fundamental miscarriage of
justice issues are closely related to the merits analysis of petitioner's grounds for relief.  Therefore, the
Court analyzes the merits of each ground of the second amended petition.

6

time of their capital crimes is prohibited by the Eighth Amendment, the United States Supreme Court stated that the "Eighth Amendment's prohibition against 'cruel and unusual punishments' must be interpreted according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design." *Roper v. Simmons*, 543 U.S. 551, 559 (2005).

The United States Supreme Court has held that the Eighth Amendment contains a "narrow proportionality principle." *Graham v. Florida*, 560 U.S. 48, 59-60 (2010) (internal quotation marks omitted). This principle "does not require strict proportionality between the crime and the sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* (internal quotations omitted). Still, it is exceptionally difficult for a defendant to show that his sentence is unconstitutionally disproportionate. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003) (the proportionality principle is applicable only in "exceedingly rare" and "extreme" cases). In determining proportionality, a court examines whether a petitioner's sentence is justified by the gravity of the triggering offense and his criminal history. *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

In the instant case, petitioner was convicted of assault with a deadly weapon, being an ex-felon in possession of a firearm, and discharging a firearm from a motor vehicle. (Exhibit 110). Petitioner was also adjudicated as an habitual criminal. (*Id.*). Petitioner was sentenced to three concurrent terms of life without the possibility of parole. (*Id.*). Petitioner argues that the three convictions were the product of firing one rifle shot from an automobile that shattered a car window, and that the sentence imposed is grossly disproportionate to the crimes committed.

The triggering offense involved petitioner's unprovoked shooting at a group of people that included a woman and her infant child. Specifically, as summarized by the Nevada Supreme Court, petitioner and a female companion drove their van to where several people and children were socializing near their parked cars. Petitioner asked some boys within the group for drugs, but the boys told him that they did not do drugs and asked him to leave. Then, as described by the Nevada

1   Supreme Court, the following occurred:

2           Approximately five to ten minutes later, the group heard a car
        screeching down the street and looked up.  They saw the same brown
3       van rounding the corner, speeding toward them.  As the van got a little
        closer, the group saw Powell in the driver's seat, holding a black rifle
4       out the window.  Specifically, they saw Powell's arm and the barrel of
        the gun aimed straight toward them.  Cole yelled "He's got a gun!" and
5       within a split-second everyone ducked down behind the cars.
        Richardson, who was holding her two-month-old daughter, ducked
6       down behind the rear driver's side tire of her car, which was parked on
        the wrong side of the street.  Cole and Shepard ducked down behind
7       the front tire of Richardson's car.  The boys all ducked down behind
        Shepard's car which was parked a few feet in front of Richardson's
8       car.  Powell fired one shot.  No one was injured; however,
        Richardson's rear windshield was shattered.
9
10  (Exhibit 81, at pp. 2-3).  Although petitioner emphasizes that no one was injured as a result of

11  petitioner shooting the rifle, this does not mitigate the fact that he fired a gun at a group of people.

12  At the February 1997 resentencing hearing, Richardson testified that the bullet fired from Powell's

13  rifle penetrated a car window and was just "inches" away from her and her infant child.  (Exhibit 87,

14  at p. 28).  Despite the fact that petitioner's bullet hit no one, in the view of this Court, petitioner's

15  criminal act of shooting a gun at a group of people, which included an infant and children, was

16  violent and egregious, placing several innocent people in fear for their lives.

17          Regarding petitioner's criminal history, at the original sentencing and at the resentencing, the

18  State presented evidence establishing petitioner's three felonies qualifying him for habitual criminal

19  treatment under NRS 207.010(1)(b) – pandering, burglary, and attempted robbery.  (Exhibits 53 &

20  87).  With respect to the attempted robbery conviction, the State represented at resentencing that

21  petitioner robbed a pizza store by jumping over the counter and holding a knife to the throat of the

22  cashier.  (Exhibit 87, at p. 45).  In addition to petitioner's felony convictions, the State presented

23  evidence of petitioner's long pattern of criminal behavior, including assault on a peace officer,

24  battery, carrying a concealed weapon, drug-related crimes, domestic violence, and multiple parole

25  violations.  (Exhibit 87, at pp. 44-47).

26          Several United States Supreme Court opinions dictate upholding a defendant's sentence,

even where the sentence seems harsh in light of the offense committed.  *Ewing v. California*, 538

U.S. 11 (2003) (upholding 25-year sentence of habitual criminal defendant for stealing three golf clubs, holding that the states may dictate how they wish to deal with recidivism issues); *Lockyer v. Andrade*, 538 U.S. 63 (2003) (upholding 50-years-to-life sentence for stealing $150 of videotapes under California's "three-strikes" law); *Hutto v. Davis*, 454 U.S. 370 (1982) (upholding 40-year prison sentence where defendant was convicted of possession with intent to sell nine ounces of marijuana); *Rummel v. Estelle*, 445 U.S. 263 (1980) (upholding life sentence where defendant was repeated offender and committed third felony of stealing $120). In this case, given petitioner's criminal history and the gravity of the crimes he committed, concurrent life sentences without the possibility of parole are not so disproportionate as to violate the Eighth Amendment. This Court denies habeas relief on Ground One of the second amended petition.

**B. Ground Two**

Petitioner contends that his due process and fair trial rights were violated because the state district court failed to "clearly disclose on the record that it had weighed the appropriate factors for and against the criminal enhancement and to determine that it was just and proper for him to be treated as a habitual criminal." (ECF No. 95, at pp. 13-15). Petitioner contends that, in addition to evidence of prior felonies NRS 201.010(1)(b) requires the trial court to make specific findings which supports the habitual criminal enhancement, make a finding on the record on whether it is just and proper for a defendant to be treated as a habitual criminal, and must clearly disclose on the record that it weighed the appropriate factors for and against the habitual criminal enhancement. The Nevada Supreme Court rejected this claim in its order of April 13, 1999, as follows:

> Appellant contends that the district court abused its discretion because the court did not make an actual determination that it was just and proper that appellant be adjudicated a habitual criminal. We conclude that appellant's contention lacks merit. The district court adjudicated appellant a habitual criminal after reviewing the presentence investigation and listening to testimony from numerous witnesses, comments from appellant, and lengthy arguments from the state and counsel for appellant. It is reasonable to assume the district court considered the arguments and report, and concluded that adjudication of appellant as a habitual criminal was just and proper. *Cf. Clark v. State*, 109 Nev. 426, 851 P.2d 426 (1993) (district court erred by adjudicating defendant a habitual offender where it appeared that

1  district court thought imposition of enhancement was mandatory, and
2  the district court therefore did not exercise any discretion in making its
   ruling).

3  (Exhibit 108, at p. 2).  The factual findings of the state court are presumed correct.  28 U.S.C. §

4  2254(e)(1).  Conclusory allegations will not overcome the presumption that the state court's findings

5  are correct.  *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2000).  The Nevada Supreme Court's

6  ruling includes an accurate summary of the evidence presented at resentencing.  (Exhibit 87).  There

7  is nothing in the record suggesting that the state district court failed to consider the evidence or that

8  the court believed that imposition of the sentences of life without the possibility of parole was

9  mandatory.  Petitioner provides no authority for the proposition that in 1999 he "had a federal

10 constitutional right to have the trial court clearly disclose on the record the fact it had weighed the

11 appropriate factors" before adjudicating him a habitual criminal.  (ECF No. 95, at p. 14).  Petitioner

12 has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or

13 involved an unreasonable application of, clearly established federal law, as determined by the United

14 States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in

15 light of the evidence presented in the state court proceeding.  Federal habeas relief is denied as to

16 Ground Two of the second amended petition.

17       **C.  Ground Three**

18       Petitioner asserts that his sentences were unconstitutional because he was "entitled to have a

19 jury 'weigh' his criminal history versus mitigating evidence before being found to be a habitual

20 criminal and sentenced to life in prison without the possibility of parole."  (ECF No. 95, at pp. 15-

21 17).  In the second amended petition, petitioner cites to *Apprendi v. New Jersey*, 530 U.S. 466

22 (2000), arguing that the jury, rather than a judge, should have decided the facts underlying his

23 habitual criminal status.  (*Id.*, at pp. 16).  This argument has been rejected by the Ninth Circuit.

24 *Tilcock v. Budge*, 538 F.3d 1138, 1143-44 (9th Cir. 2008).  In *Tilcock v. Budge*, the Ninth Circuit

25 concluded that "under the terms of the [Nevada habitual] statute, the fact of petitioner's prior

26 convictions alone exposed petitioner to the statutory maximum of life imprisonment without the

possibility of parole.  The statute does not require or even authorize additional judicial factfinding to determine whether a defendant is a habitual criminal."  538 F.3d at 1143.  In petitioner's reply, he concedes that Ground Three is meritless in light of *Tilcock v. Budge*, 538 F.3d at 1143-44.  (ECF No. 127, at p. 17).  Federal habeas relief is denied as to Ground Three of the second amended petition.

**D. Ground Four**

Petitioner asserts that his right to the effective assistance of counsel was violated because his trial counsel failed to move to sever Count IV (ex-felon in possession of a firearm) from the remaining charges prior to trial.  (ECF No. 95, at pp. 17-18).  Petitioner argues that because counsel failed to move to sever the charge of being an ex-felon in possession of a firearm, the State was allowed to present evidence of his prior conviction for attempted robbery.  Petitioner's counsel did not move to sever the ex-felon in possession of a firearm count, and did not object to the evidence of petitioner's prior conviction.  Petitioner contends that: "The jury's exposure to Powell's prior felony conviction for a crime of violence, i.e., attempted robbery, necessarily contaminated the evidence presented on the other charges and prejudiced Powell's right to a fair trial."  (*Id.*, at p. 17).

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) counsel's performance was unreasonably deficient, and (2) that the deficient performance prejudiced the defense.  *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

11

1  burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

2  *Id.*

3       Ineffective assistance of counsel under *Strickland* requires a showing of deficient

4  performance of counsel resulting in prejudice, "with performance being measured against an

5  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

6  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

7  ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

8  to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

9  5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

10  reasonable professional assistance.  *Id.*

11       The United States Supreme Court has described federal review of a state supreme court's

12  decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

13  131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct.

14  1411, 1413 (2009)).  In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly

15  deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'"  *Id.* at

16  1403 (internal citations omitted).  Moreover, federal habeas review of an ineffective assistance of

17  counsel claim is limited to the record before the state court that adjudicated the claim on the merits.

18  *Id.* at 1398-1401.  The United States Supreme Court has specifically reaffirmed the extensive

19  deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

20       Establishing that a state court's application of *Strickland* was
        unreasonable under § 2254(d) is all the more difficult.  The standards

21       created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at
        689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117

22       S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in
        tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at

23       1420.  The *Strickland* standard is a general one, so the range of
        reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at

24       1420.  Federal habeas courts must guard against the danger of equating
        unreasonableness under *Strickland* with unreasonableness under §

25       2254(d).  When § 2254(d) applies, the question is whether there is any
        reasonable argument that counsel satisfied *Strickland's* deferential

26       standard.

1    *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).  "A court considering a claim of

2    ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was

3    within the 'wide range' of reasonable professional assistance."  *Id.* at 787 (quoting *Strickland*, 466

4    U.S. at 689).  "The question is whether an attorney's representation amounted to incompetence

5    under prevailing professional norms, not whether it deviated from best practices or most common

6    custom."  *Id.* (internal quotations and citations omitted).

7            The Nevada Supreme Court summarily denied petitioner's claim that his counsel was

8    ineffective for failing to move to sever Count 4 from the remaining charges, affirming the state

9    district court's denial of the post-conviction habeas petition.  (Exhibit 187).  The state district court

10   denied the claim, as follows:

11                   Claims 8 and 9 allege, in essence, that trial counsel was ineffective
                     because he failed to file a motion to sever the ex-felon count from the
12                   assault with a deadly weapon counts and/or the district judge erred in
                     failing to sever the counts on his own motion.  The relief requested by
13                   claims 8 and 9 is denied.

14                   First, while the court is confident that a reasonably competent lawyer
                     would have asked to sever the counts, Powell, failed to present any
15                   evidence rebutting the legal presumption that counsel's omission was
                     reasonable under prevailing professional norms.  More importantly, the
16                   court is equally confident that had trial counsel made the motion, and
                     had the court granted it, there is no reasonable probability that Powell
17                   would have been acquitted on any count in separate trials.  The weight
                     of the evidence was truly overwhelming and largely undisputed.
18
                     Finally, the court is aware that the Nevada Supreme Court recently
19                   ruled that where the State seeks convictions on multiple counts,
                     including a count of possession of a firearm by an ex-felon, severance
20                   of the latter is required.  *Brown v. State*, 114 Nev. 1118, 967 P.2d 1126
                     (1998).  *Brown* postdates Powell's trial, however, he is not entitled to
21                   retroactive application.  *Hughes v. State*, 116 Nev. 975, 981, 12 P.3d
                     948 (2000); *see also Schoels v. State*, 116 Nev. 33, 36, 975 P.2d 1275
22                   (1999).  By the same token, appellate counsel would not have been
                     ineffective in failing to raise this claim in Powell's direct appeal.
23
24   (Exhibit 167, at p. 6).  Petitioner has failed to show that any deficient conduct by his counsel resulted

25   in prejudice under *Strickland*.  To establish prejudice, the defendant must show that there is a

     reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
26
     would have been different.  *Williams v. Taylor,* 529 U.S. at 390-391.  A reasonable probability is

                                                    13

1   "probability sufficient to undermine confidence in the outcome." *Id.* Here, petitioner argues that

2   "the fact that the counts were heard together increased the likelihood of a conviction at a single

3   trial," and "the jury's decision was tainted by Powell's prior felony conviction for a violent crime."

4   (ECF No. 127, at p. 20).  Even assuming that the failure to sever the ex-felon in possession of a

5   firearm charge was erroneous, the overwhelming evidence of guilt presented at trial, as noted by the

6   state district court, reduces the possibility that such error actually impacted the jury's verdict.

7   Petitioner has not shown a reasonable probability that, but for counsel's alleged unprofessional

8   errors, the result of the trial would have been different.  Petitioner has failed to meet his burden of

9   proving that the state court's ruling was contrary to, or involved an unreasonable application of,

10   clearly established federal law, as determined by the United States Supreme Court, or that the ruling

11   was based on an unreasonable determination of the facts in light of the evidence presented in the

12   state court proceeding.  Federal habeas relief is denied as to Ground Four.

13        **E.  Ground Five**

14        Petitioner claims that he was sentenced in violation of the Double Jeopardy Clause because

15   the Nevada legislature did not intend for him to receive multiple punishments under the

16   circumstances of his case.  (ECF No. 95, at pp. 18-19).

17        The Double Jeopardy Clause provides:  "[N]or shall any person be subject for the same

18   offense to be twice put in jeopardy of life and limb."  U.S. Const. Amend. V.  The Double Jeopardy

19   Clause protects defendants against both successive punishments and prosecutions for the same

20   criminal offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993).  Only where two offenses for

21   which the defendant is punished or tried cannot survive the "same elements" test does the double

22   jeopardy bar apply. *Id.*  The "same elements" test was enunciated by the United States Supreme

23   Court as follows: "Where the same act or transaction constitutes a violation of two distinct statutory

24   provisions, the test to be applied to determine whether there are two offenses or only one, is whether

25   each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284

26   U.S. 299, 304 (1932).

In the second amended petition, petitioner argues that he could have been charged under NRS 202.290 for aiming a firearm at a human being or discharging a weapon where a person might be endangered.  (ECF No. 95, at pp. 18-19).  Petitioner argues that instead of charging him with a violation of NRS 202.290, the prosecutor charged him with discharging a firearm from a vehicle (NRS 202.287) and assault with a deadly weapon (NRS 200.471).  Petitioner contends that "the Nevada legislature did not intend the cumulative punishments that Powell received in this case." (ECF No. 95, at p. 19).  Petitioner makes no argument in the second amended petition to show that his convictions violate the "same elements" test.  Petitioner cites no authority suggesting that the prosecutor's decision to charge him under NRS 202.287 and NRS 200.471 was improper or was a violation of the Double Jeopardy Clause.

In the reply brief, petitioner argues for the first time in this litigation that his convictions for assault with a deadly weapon (Count I) and discharging a firearm from a motor vehicle (Count V) violate the *Blockburger* "same elements" test in violation of the Double Jeopardy Clause.  (ECF No. 127, at pp. 21-23).  The elements of assault with a deadly weapon (Count I) are: (1) an unlawful (2) attempt to use physical force (3) against another person (4) with a deadly weapon.  NRS 200.471(1)(a)(1).  The elements of discharging a firearm from a motor vehicle (Count V) are: (1) a person maliciously or wantonly (2) discharges (3) a firearm (4) from inside a motor vehicle (5) in a populated area designated by city ordinance.  NRS 202.287(1)(b).  Petitioner argues that the second element of Count I, "attempt to use physical force" is the same as the second and third element of Count V, "discharging a firearm."  Petitioner states that: "When someone discharges a firearm, they are always attempting to use physical force." (ECF No. 127, at p. 22).  This is not so.  The discharging of a firearm is not necessarily connected with using physical force against another person.  Petitioner further argues that the third element in Count I, "against other person," is encompassed in the fifth element of Count V, which requires the act to be "in a populated area."  The Court rejects this analysis.  Discharging an firearm "in a populated area" is distinctly different from attempting to use force against a specific person or persons.  Petitioner's convictions for assault with

a deadly weapon (Count I) and discharging a firearm from a motor vehicle (Count V) do not violate the *Blockburger* "same elements" test.  Federal habeas relief is denied as to Ground Five of the second amended petition.

**F.  Ground Six**

Petitioner claims that appellate counsel was ineffective for failing to raise the double jeopardy issue on appeal.  (ECF No. 95, at pp. 19-21).  Both the state district court and the Nevada Supreme Court summarily denied petitioner's claim of ineffective assistance of appellate counsel. (Exhibits 167 & 187).

Under *Strickland*, a petitioner must show that his counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. *Strickland v. Washington*, 446 U.S. 668, 684 (1984).  The *Strickland* standard also applies to claims of ineffective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  To state a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate: (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) that the resulting prejudice was such that the omitted issue would have a reasonable probability of success on appeal.  *Id.*  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Id.* at 751-52. Petitioner must show that his counsel unreasonably failed to discover and file nonfrivolous issues. *Delgado v. Lewis*, 223 F.3d 976, 980 (9th Cir. 2000).  It is inappropriate to focus on what could have been done rather than focusing on the reasonableness of what counsel did.  *Williams v. Woodford*, 384 F.3d 567. 616 (9th Cir. 2004) (citation omitted).

As discussed *supra*, the double jeopardy claim is meritless, thus appellate counsel was not unreasonably deficient for not raising the issue on direct appeal.  For the same reason, there was no prejudice, because there was no reasonable probability that petitioner could have succeeded on the

16

double jeopardy claim.  *See, e.g. Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (no

prejudice when appellate counsel fails to raise an issue on direct appeal that is not grounds for

reversal); *Miller v. Keeny*, 882 F.2d 1428, 1434 (9th Cir. 1989) (appellate counsel remains above

objective standard of competence and does not cause client prejudice when counsel declines to raise

a weak issue on appeal); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise

meritless argument does not constitute ineffective assistance.").  As such, federal habeas relief is

denied as to Ground Six.

**G.  Ground Seven**

Petitioner claims that there was insufficient evidence to support his conviction for

discharging a firearm from a vehicle.  (ECF No. 95, at pp. 21-22).  Petitioner also claims that he is

actually innocent of discharging a firearm from a vehicle.  (*Id.*).  Petitioner argues that the passage of

Reno Municipal Code 8.18.025, enacted in 1996, demonstrates that at his August 1995 trial, the

State could not have met the element of NRS 202.287 that requires that the discharge of a firearm be

"within an area designated by city or county ordinance as a populated area for the purpose of

prohibiting the discharge of weapons . . . ."  (*Id.*, at p. 22).

When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the

court reviews the record to determine "whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*,

207 F.3d 557, 563 (9th Cir. 2000).  The *Jackson* standard does not focus on whether a correct guilt

or innocence determination was made, but whether the jury made a rational decision to convict or

acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Under the *Jackson* standard, the prosecution

has no obligation to rule out every hypothesis except guilt.  *Wright v. West*, 505 U.S. 277, 296 (1992)

(plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023.  *Jackson* presents "a high

standard" to habeas petitioners claiming insufficiency of the evidence.  *Jones v. Wood*, 207 F.3d 557,

563 (9th Cir. 2000).

Sufficiency of the evidence claims are limited to a review of the record evidence submitted at trial. *Herrera*, 506 U.S. at 402. Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324, n.16). The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the determination does not appear on the record, and must defer to that resolution. *Jackson*, 443, U.S. at 326. The United States Supreme Court has recently held that "the only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, ___U.S. ___ (per curium) (2012).

In the instant case, the jury was instructed on the elements of discharging a firearm from a motor vehicle, as follows:

> Any person, while in a motor vehicle, who maliciously or wantonly discharges or causes to be discharged out of the motor vehicle, any pistol, gun, or any other kind of firearm, within an area designed by City or County ordinance as a populated area for the purpose of prohibiting discharge of weapons, is guilty of discharging a firearm from a motor vehicle.

(Exhibit 51, Instruction 17). The prosecution presented evidence of Reno Municipal Code 8.22.060, which provided, in relevant part: "It is unlawful for any person to discharge any gun, pistol or other firearm in or upon any of the public streets, highways, alleys or other public place, or in or upon or about any building or vacant lot, or anywhere within the limits of the city . . . ." (Exhibit 50, at p. 372; Exhibit 210). Section 8.22.060 of the Reno Municipal Code did not include a specific designation that Reno is a "populated area," a fact that petitioner clings to in arguing that there was insufficient evidence for the jury to have found him guilty of discharging a firearm from a vehicle under NRS 202.287. Petitioner points out that later, in 1996, Reno adopted Section 8.18.025, which provides that: "For purposes of this ordinance, Nevada Revised Statutes and the prohibition on the discharge of firearms within the city limits, all areas within the city limits of the City of Reno are

1    deemed to be populated areas." (Exhibit 196).

2          Notwithstanding the absence of a city ordinance specifically designating Reno as a populated

3    area, the jury heard testimony that the shooting occurred near Pat Baker Park in Reno. (Exhibit 50,

4    at p. 20). The jury also heard testimony that at the time of the shooting, a group of people was

5    standing near the park, near their vehicles, on the corner of a public street. (*Id.*, at pp. 21-22, 66, 90,

6    126). This evidence established that the shooting occurred within a populated area. From this

7    evidence, the jury could have reasonably inferred from the testimony and Reno Municipal Code

8    8.22.060 prohibiting the discharge of firearms "in or upon any of the public streets" that streets

9    within Reno city limits were designated "populated areas" for the purpose of prohibiting the

10   discharge of weapons. The fact that the City of Reno later adopted Municipal Code Section

11   8.18.025, which clarified that all areas within city limits are deemed to be "populated areas" does not

12   demonstrate that the jury could not have found the necessary elements based on the evidence

13   presented at trial. Moreover, the analysis of claims challenging the sufficiency of the evidence are

14   limited to a review of the "record evidence" submitted at trial. *Herrera*, 506 U.S. at 402. As such,

15   Municipal Code Section 8.18.025 reaches beyond the state court trial record, and cannot be

16   considered in analyzing the sufficiency of the evidence under *Jackson*. On review of the record

17   evidence in this case, the Court concludes that a rational trier of fact could have found the essential

18   elements of discharging a firearm under NRS 202.287 beyond a reasonable doubt. *See Jackson v.*

19   *Virginia*, 443 U.S. at 319. As such, the Court denies petitioner's claim that there was insufficient

20   evidence to support the crime of discharging a firearm from a vehicle.

21          Finally, to succeed on a claim of actual innocence, a petitioner is required to make:

22                  a truly persuasive demonstration of "actual innocence" . . . [and]
                    because of the very disruptive effect that entertaining claims of actual
23                  innocence would have on the need for finality in capital cases, and the
                    enormous burden of having to retry cases based on often stale evidence
24                  would place on the States, the threshold showing for such an assumed
                    right would necessarily be extraordinarily high.
25
     *Herrera v. Collins*, 506 U.S. 390, 417 (1993). This "contemplates a stronger showing than
26
     insufficiency of the evidence to convict" or "doubt about his guilt." *Carriger v. Stewart*, 132 F.3d

463, 476 (9th Cir. 1997).  Under these standards, a petitioner must "affirmatively prov[e] that he is probably innocent."  *Id.*  This Court has rejected petitioner's claim that there was insufficient evidence to support the crime of discharging a firearm from a vehicle.  Petitioner has failed to make the stronger showing required to prove actual innocence.  Accordingly, federal habeas relief is denied as to the entirety of Ground Seven.

## IV.  Certificate of Appealability

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*  In this case, no reasonable jurist would find this Court's denial of the petition debatable or wrong.  The Court therefore denies petitioner a certificate of appealability.

## V.  Conclusion

**IT IS THEREFORE ORDERED** that second amended petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

1    **IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT**

2    **ACCORDINGLY.**

3           Dated this 12th day of September, 2014.

4

5                                                    _____

6                                                    HOWARD D. McKIBBEN
                                                     UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26